IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUANITA H., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 C 1585 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Juanita H.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. *See* [ECF No. 6]. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Claimant filed a document entitled Plaintiff's Brief [ECF No. 12], which the Court construes as Claimant's motion to reverse the decision of the Commissioner of Social Security or alternatively to remand the case for further proceedings. In response, the Commissioner filed a Motion for Summary Judgment [ECF No. 19] and Memorandum of Law in Support of the Motion

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her first name and the first initial of the last name.

[2] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

for Summary Judgment [ECF No. 20]. Claimant then filed a Reply Brief [ECF No. 21]. This matter is fully briefed and ripe for review.

For the reasons discussed this Memorandum Opinion and Order, Claimant's request [ECF No. 12] that the Court reverse the Commissioner's decision and award her disability benefits or alternatively remand this matter for further proceedings before the Commissioner is denied. The Commissioner's Motion for Summary Judgment [ECF No. 19] is granted, and the Court affirms the Commissioner's decision denying benefits in this case.

## PROCEDURAL HISTORY

Claimant filed applications for disability insurance benefits and supplemental security income on October 17, 2014 pursuant to Titles II and XVI of the Social Security Act, alleging a disability onset date beginning October 21, 2013. (R. 17). Her applications were denied initially on March 26, 2015 (R. 17), and upon reconsideration on August 24, 2015 (R. 17). On September 17, 2015, Claimant submitted a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. 17). Claimant appeared and testified at a hearing held on June 6, 2017 before ALJ Michael Logan. (R. 48-79). At the hearing, Claimant was represented by attorney Jennifer Danish. (R. 17, 50). During the hearing, the ALJ also heard testimony from an impartial medical expert, James M. McKenna M.D., (R. 64-74) and vocational expert, Kari Seaver (R. 74-78).

On January 4, 2018, the ALJ issued his decision denying Claimant's applications for disability insurance benefits and supplemental security income. (R. 17-41). In finding Claimant was not disabled within the meaning of the Act, the ALJ followed the five-step evaluation process required by Social Security Regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since October 21, 2013, which is onset date of her alleged disability. (R. 20). At step two,

the ALJ found that Claimant has severe impairments, including status post left hip arthroplasty, obesity, and diabetes mellitus as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c). (R. 20).

At step three, the ALJ concluded Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 32). The ALJ then found Claimant has the residual functional capacity ("RFC")[3] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except that she never can climb long ladders, work at unprotected heights or in proximity to moving or entrapping machinery and that she frequently can bend, stoop, kneel, crouch, and crawl. (R. 33). The ALJ further found that Claimant can work without appreciable limitation in concentration leading to on-task productivity, can work without social limitation and work attendance deficits, and can take public transportation, feed, dress, bathe herself, and engage in person hygiene. (R. 33).

At step four, the ALJ found that Claimant was capable of performing her past relevant work as a marketing representative because that work does not require the performance of work-related activities that are precluded by her RFC. (R. 40). The ALJ's finding that Claimant was able to perform her past relevant work is dispositive, and therefore, the ALJ was not required to proceed to step five to consider if there are other jobs existing in significant numbers in the national economy that Claimant could perform. (R. 40-41). Based on all of these reasons, the ALJ found Claimant was not disabled under the Act. (R. 41).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008).

On January 8, 2028, Claimant timely filed a request for review. (R. 175). The Appeals Council declined to review the matter on January 9, 2019 (R. 1-6), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

4

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant underwent a total replacement of her left hip on November 4, 2003. She ~~but~~ fell at work ten years later on October 21, 2013, which she claims led to chronic debilitating hip pain and related symptoms. Claimant's Brief [ECF No. 12], at 2.[4] Claimant argues that: (1) the opinion of the medical expert, Dr McKenna, about Claimant's pain was based on misstated facts and unsupported assumptions and the ALJ erred when he relied on the medical expert's opinion; and (2) the ALJ's assessment of Claimant's cognitive functioning ignored the facts and was not supported by substantial evidence.

At the outset of the Court's review, it is important to note that the Court's role in this case is not to determine from scratch whether or not Claimant is disabled and entitled to disability insurance benefits or supplemental security income. Instead, as set forth above, the law mandates that this Court's review of the ALJ's findings is deferential, and the Court only must determine whether the ALJ applied the correct legal standard and confirm that the ALJ's decision is supported by substantial evidence. *See Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). This Court cannot consider the facts anew or draw its own conclusion. Rather, if

---

[4] In her Opening Brief, Claimant states that she had a hip replacement in 2002. Claimant's Brief [ECF No. 12], at 2. The medical records, however, show that Claimant had total hip replacement surgery for her left hip on November 4, 2003. (R. 379).

substantial evidence supports the ALJ's factual findings, those findings are conclusive, and the Commissioner's decision must be affirmed. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms*, 553 F.3d at 1097 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a that determination, the Court must review the record as a whole, and it cannot re-weigh the evidence or substitute its judgment for that of the ALJ. *Id.*

**I. The ALJ Did Not Err in Giving Controlling Weight to the Opinion of the Medical Expert**

A medical opinion is entitled to controlling weight only when it is (1) rendered by a treating source, (2) well supported by medically acceptable clinical and laboratory diagnostic techniques, and (3) not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). When not entitled to controlling weight, as is the case with the opinion of a medical expert like Dr. McKenna in this instance because he was not Claimant's treating physician, an ALJ must assign the medical opinion appropriate weight after considering relevant factors, such as whether the evidence supported the opinion, whether the opinion was consistent with the record as a whole, and taking into consideration the specifics of the relationship between the opinion's author and the claimant. 20 C.F.R. § 404.1527(c). An ALJ is not required to discuss every factor listed in the regulation, *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012), but rather the ALJ need only "minimally articulate" his reasons for the weight he assigns to a medical opinion. *See Elder*, 529 F.3d at 415. The Court finds that the ALJ's assessment of Dr. McKenna's opinion is consistent with these standards and is supported by substantial evidence.

The ALJ addressed Dr. McKenna's opinion at several points throughout his decision, explaining why he gave the opinion great weight and how he formulated Claimant's RFC consistent with Dr. McKenna's assessment. (R. 31-32, 38, 39-40). The ALJ acknowledged that

Dr. McKenna did not treat or examine Claimant, but the ALJ noted that Dr. McKenna clearly had reviewed and was familiar with Claimant's medical records and listened to her hearing testimony. (R 31); *see* 20 C.F.R. § 404.1527(c)(1), (2). The ALJ also noted that Dr. McKenna was a neutral medical source, who both heard Claimant's testimony over the telephone and was familiar with Social Security programs. (R. 32); *see* 20 C.F.R. § 404.1527(c)(6). The ALJ found that Dr. McKenna's opinion was well-reasoned, supported by the objective medical evidence, and consistent with a significant portion of the longitudinal record. (R. 32, 40); *see* 20 C.F.R. § 1.

Claimant argues that Dr. McKenna's opinion was "erroneous" and based on misstatements and "unsupported assumptions." Claimant's Brief [ECF No. 12], at 12-14. In making this argument, Claimant does not give due credit to~~ignores~~ Dr. McKenna's testimony and explanation for his opinion. At the hearing, Dr. McKenna explained that the objective medical evidence did not provide a satisfactory basis~~ny explanation~~ for Claimant's reported severe hip pain. (R. 64-68). Dr. McKenna noted that an initial x-ray on October 21, 2013, after Claimant fell, did not reveal any problems with her left hip (R. 64-65); (R. 477) ("No acute fracture or dislocation are demonstrated. The alignment of the bones and orthopedic hardware are anatomic."). Dr. McKenna then noted that an x-ray taken on November 19, 2013 was read as reflecting possible loosening of a screw in Claimant's hip prosthesis. (R. 65-66); (R 473) ("There is redemonstration of a total left hip joint replacement in good position. There are no acute fractures. There is interval lucency seen interposed between the acetabular component and bone. This may reflect loosening.").

Notably, however, Dr. McKenna further testified that every subsequent medical imaging study after November 19, 2013 did not reveal any structural problems with Claimant's prosthesis or the bones in her hip and did not find any loosening of the screws in Claimant's prosthesis or the

7

bones in her hip. (R. 66-68, 352, 485, 551, 554, 586, 966).[5] Dr. McKenna highlighted that, despite Claimant's continued assertion that screws were loose in her hip prosthesis, orthopedists who examined Claimant (and ordered and reviewed medical imaging of the left hip) did not identify any problems and did not recommend surgery on her left hip. (R. 67-68, 583, 968). Indeed, one orthopedist concluded that Claimant's complaint might stem from a soft tissue injury. That doctor recommended physical therapy, and the record shows that the physical therapy at one point slowly improved Claimant's condition. (R. 68, 583, 590, 599).

In making her argument, Claimant relies heavily on Dr. McKenna's hypothesis that Claimant initially told Dr. Klugman on November 19, 2013, that her pain was gone (R. 434) but then reported that she had been in pain since her October 2013 fall (R. 436) only after Claimant learned that the radiologist interpreted her x-ray to show loosening of the hardware in her hip from her hip replacement (R.65). Claimant is correct that the record does not support Dr. McKenna's hypothesis concerning why Claimant continued to report hip pain. Indeed, the time stamps for the medical record notes of Dr. Klugman and the radiologist would seem to belie that theory as Dr. Klugman's note reflects a time of roughly one hour before the radiologist's note. *Compare* R. 434-36 (Dr. Klugman's notes time stamped 11/19/13 at 11:13 a.m.) *with* R. 473-474 (radiologist's note time stamped 11/19/13 at 12:33 p.m.). There is nothing in the record to show that Claimant changed what she said to Dr. Klugman about her pain level after she learned that the radiologist

---

[5] Dr. McKenna is correct that the record evidence is consistent on this point. *See, e.g.,* (R. 485) (medical imaging taken of left hip on 2/10/15 noting "Good position and alignment."); (R. 554) (medical imaging taken on 3/27/15 noting "Left hip prothesis appears to be adequately aligned. No evidence of loosening."); (R. 551) (medical imaging taken on 3/31/15 noting "There is no abnormal uptake along the left hip prothesis to suggest loosening…."); (R. 764) (medical imaging taken on 12/7/16 noting "No acute findings. No change since prior study."); (R. 966) (medical imaging on 4/12/17 noting "There are no findings to indicate the presence of loosening of the left hip prothesis or any osseous pathology.").

said the hardware in her hip was loose. But that is not the critical part of Dr. McKenna's opinion and does not detract from Dr. McKenna's assessment of the objective medical evidence.

A review of Claimant's medical records shows that Dr. McKenna relied on a wealth of objective medical evidence in the record to support his view that Claimant's hip pain was not secondary to any changes in her hip or the hardware inserted during her total hip arthroplasty in 2003 (R. 66-68, 352, 485, 551, 554, 586, 966), and the ALJ cited to Dr. McKenna's opinion in this respect in her opinion. (R. 30-31). Dr. McKenna also relied upon the fact that Dr. Klugman's opinion was based heavily on Claimant's subjective symptom statements that were not supported by the objective medical evidence in the record and that, in some instances, were contradictory. (R. 30-31). When Claimant saw Dr. Klugman on November 19, 2013, for example, she appears to have initially reported that her "[p]ain is gone now" but then that her "hip pain [was] worse since the fall." (R. 434, 436). The second report of pain appears to have been after Dr. Klugman noted that Claimant had "pain to external rotation" in her left hip. (R. 436). In addition, Dr. Klugman completed a Physical Residual Functional Capacity Questionnaire on October 28, 2016 in which she noted Claimant's diagnosis as severe left hip pain with loose screw. (R. 565). The subsequent objective medical records and x-rays contradict that diagnosis and illustrate that Dr. Klugman's opinion was based heavily on Claimant's subjective symptom statements that were not supported by the objective medical evidence in the record, which is one of the reasons why the ALJ reasonably gave only "slight weight" to Dr. Klugman's opinion. (R. 30-31)

After reviewing a significant amount of additional medical evidence and hearing Claimant testify at the hearing, Dr. McKenna concluded that Claimant was convinced there was a problem with her hip despite "a heavy dose of objective medical evidence that she [did] not have a problem in her hip." (R. 69). The ALJ reasonably relied upon Dr. McKenna's assessment that Claimant

9

appeared convinced that something was wrong with her hip, but that the objective medical evidence did not support her assertions. (R. 31).

In addition to considering Dr. McKenna's testimony, the ALJ carefully reviewed Claimant's medical records and specifically discussed the records cited by Claimant, as well as the numerous imaging studies referenced by Dr. McKenna. (R. 24, 33) (citing medical records). The ALJ also considered treatment and examination notes reflecting both Claimant's subjective complaints to providers and examination results. (R. 24-27, 33-39). None of the evidence identified by Claimant was ignored either by Dr. McKenna during his testimony or by the ALJ in his decision. Both considered the evidence Claimant cited and the remainder of the medical evidence in the record. The ALJ sufficiently explained why he gave Dr. McKenna's controlling weight. (R, 31-32). Claimant's attempt to undercut Dr. McKenna's testimony based upon his hypothesis that Claimant changed her testimony about her hip pain only after she learned the results of her hip x-ray does not bear the weight she places on it.

The predominant theme of Claimant's arguments in this case is that the ALJ erred in relying upon Dr. McKenna's medical opinion and not fully crediting Claimant's subjective complaints about her pain. Claimant repeatedly asserts that the ALJ's conclusion that she was capable of performing light work is not consistent with the pain she was experiencing. The question, however, is not whether Claimant had/has some pain, but rather, the degree to which Claimant's hip pain limited her ability to perform light work. That Claimant consistently reported she experienced some pain does not establish that she was limited in significant ways, or to the degree Claimant would have this Court credit. *See Collins v. Barnhart*, 114 F. App'x 229, 234 (7th Cir. 2004). The ALJ gave specific reasons to support his careful and detailed analysis of Claimant's request for benefits in this case, and his explanation is supported by the record. Accordingly, the ALJ's

decision cannot be overturned on appeal. (R. 38-40). *Skarbeck v. Barnhart*, 390 F. 3d 500, 505 (7th Cir. 2004).

In this case, the ALJ built a logical bridge between the record evidence and his conclusion that limiting Claimant to light work adequately accounted for her functional limitations, and the ALJ accounted for Claimant's ambulatory limitations in the RFC when he restricted her to light work. (R. 33-40). Those restrictions are consistent with Dr. McKenna's medical opinion, the evaluations of the state agency physicians, the objective medical evidence, and Claimant's activities of daily living. The ALJ also considered Claimant's impairments in combination, including Claimant's obesity, which the ALJ took into consideration when formulating the RFC. (R. 32-33). Claimant does not argue in her brief that she has any limitations stemming from her obesity that would affect her ability to work.

Neither Dr. McKenna nor the ALJ fully credited Claimant's complaints of pain. The ALJ ultimately is responsible for explaining his subjective symptom evaluation "in such a way that allows [the Court] to determine whether []he reached h[is] decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here by providing detailed reasons for his functional assessments which are reasonably supported by the record as a whole. (R. 33-40). Because the ALJ's determination that Claimant's subjective symptom statements were not consistent with the medical evidence, that conclusion did not lack "any explanation or support" and was not "patently wrong," and the Court cannot overturn it.

At the end of Claimant's argument challenging the Dr. McKenna's assessment of her pain and the ALJ's decision to give it controlling weight, Claimant asserts, without any citation to record evidence or legal authority, that the ALJ was required to consider or should have considered

11

her allegations of pain "in the context of [her] anxiety and depression." Claimant's Brief [ECF No. 12], at 14. In response, the Commissioner asserts that a single sentence asserting that the ALJ should have considered her complaints of pain in conjunction with her anxiety and depression is insufficiently developed to put the claim at issue before this Court.

The Court agrees with the Commissioner that a single sentence is not enough to develop an argument, and the Court is left to speculate, which it is not permitted to do. It is well-settled law that perfunctory and undeveloped arguments are waived. *Truelove v. Berryhill*, 753 Fed. Appx. 393 (7th Cir. 2018) (holing that single-sentence argument deemed waived); *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Crespo v. Colvin*, 824 F.3d 667, 668 (7th Cir. 2016); *United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) (finding that a single-sentence argument that is "unsupported, undeveloped" . . . is "an afterthought . . . and is deemed waived"). As another court in this district recognized, "[j]udges are not required to sift through the record without direction from counsel … and find evidentiary support for contentions tossed out like salt strewn on an icy sidewalk ...." *Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 934 (N.D. Ill. 2019).[6] Moreover, the Court notes that the ALJ acknowledged Claimant's depression, but found that it had "no more than a minimal impact on her ability to perform work related activities." (R. 39). Specifically, the ALJ found that Claimant "is able to work without appreciable limitation in concentration leading to task productivity or social limitation, and take public transportation, feed, dress, and bathe herself and engage in personal hygiene." (R. 39).

---

[6] *See also Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018) ("As has become 'axiomatic' in our Circuit, '[j]udges are not like pigs, hunting for truffles buried in' the record.'") (internal citation omitted); *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014) (recognizing that lawyers cannot expect judges to play archaeologist with the record); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992) (holding that "compelling the court to take up a burdensome and fruitless scavenger hunt ... is a drain on its time and resources").

The ALJ's decision may not be perfect, but it need not be. *See Buchholtz v. Barnhart,* 98 F. App'x 540, 544 (7th Cir. 2004). As discussed above, the issue presented is not whether this Court would have reached the same result as the ALJ did, but whether the ALJ was justified in reaching the decision he reached on the record before him. Claimant essentially asks the Court to second-guess Dr. McKenna's assessment of the medical evidence and the ALJ's reliance on Dr. McKenna's expert opinion. That, however, is not the Court's role in this case. *See Simila v. Astrue,* 573 F.3d 503, 513 (7th Cir. 2009) (a reviewing court should not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations"). Ultimately, it is for the ALJ to weigh the evidence and to make judgments about which evidence is most persuasive. *See Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989). The Court finds that the ALJ weighed the evidence as he was required to do and adequately explained his reasoning in a thorough decision.[7] At the end of the day, the ALJ concluded that, during the relevant time period, Claimant was able to do the work she had been doing as a marketing representative before her position was phased out and eliminated, which is consistent with Dr. McKenna's opinion. Because the ALJ examined the relevant evidence and reached a conclusion reasonably supported by that evidence, this Court cannot overturn that conclusion.

For all of these reasons, the Court finds that there is nothing in the record to support a finding that the ALJ committed any error that warrants remand.

---

[7] *See Donald L. v. Saul*, 2019 WL 3318165, at *5 (N.D. Ill. Jul. 24, 2019) (recognizing that "it is not the court's role to reweigh the evidence or substitute its judgment for the ALJ's"); *Melissa G. v. Saul*, 2019 WL 4392995, at *4 (N.D. Ill. Sept. 13, 2019) ("[T]he Court agrees with the Commissioner that Plaintiff essentially invites the Court to revisit the mental impairment evidence, ignore the weight the ALJ gave to the substantial evidence she relied on when formulating her opinion, and reweigh the evidence in Plaintiff's favor. The Court declines the invitation, as it is required to do").

**II. The ALJ Properly Considered Claimant's Cognitive Functioning**

Claimant's next argument is that the ALJ erred when assessing her ability to understand, remember, or apply information because there is evidence in the record that she had difficulty implementing her diabetes treatment regimen. Claimant's Brief [EFC No. 12], at 14-15. Claimant primarily relies on records from February, March, May, and June 2013 to support her argument that she had difficulty comprehending her diabetes management, did not understand how her medication worked, and had difficulty with executing her meal plans. Claimant's Brief [EFC No. 12], at 14-15 (citing record). These records, however, pre-date Claimant's alleged disability onset and occurred while she still was working.

In response, the Commissioner notes the ALJ expressly acknowledged and considered that, at times, Claimant had difficulty understanding and implementing her diabetes treatment regimen. Commissioner's Brief [ECF No. 20], at 7. Specifically, the ALJ recognized that "[n]otes from later in January 2014 indicate that claimant had difficulty comprehending her diabetes management." Commissioner's Brief [ECF No. 20], at 7 (citing R. 24, 244). The ALJ also considered a treatment note from several weeks later, which reflected that Claimant was having some success with her meal plan and was motivated to continue adhering to her diabetes treatment plan. Commissioner's Brief [ECF No. 20], at 7 (citing R. 33, 451) ("She is so pleased with her weight loss and BG [blood glucose] control. It is evident that she can do it."). In February 2014, the ALJ noted, Claimant's primary care provider noted that she was "[d]oing much better" with her diabetes management. Commissioner's Brief [ECF No. 20], at 7 (citing R. 33, 454). The ALJ also considered the remainder of the evidence related to Claimant's ability to understand, remember, or apply information, and reasonably concluded that Claimant had no more than mild limitations, and that she had failed to establish work-related mental limitations. (R. 21, 24-40).

The Court finds that the ALJ's assessment is supported by substantial evidence. As noted above, Claimant's argument primarily relies on records from February, March, May, and June 2013, all of which predated Claimant's alleged disability onset and occurred while she still was working. Claimant's Brief [ECF No. 12], at 15; (R. 17) (alleging she became disabled in October 2013, after a fall at work), (R. 52- 55) (describing her work as a marketing representative from 2002 until her position was phased out in October 2013). Those treatment records do not reasonably support a finding that the ALJ committed any error, and do not undermine the ALJ's conclusion that Claimant retained the ability to perform her past relevant work. (R. 33, 40). Claimant still was performing her past relevant work at the time she had this difficulty understating, implementing, or maintaining her diabetes management. Claimant also cites a November 2014 treatment note for the proposition that at that time she "did not take home her blood sugar or bring sugar log to appointment." Claimant's Brief [ECF No. 12], at 14. The record, however, shows that Claimant did bring her sugar log to the appointment. (R. 383) (noting that "Pt did bring sugar log"). Significantly, those treatment records also show that Claimant did not have any hypoglycemic episodes, was checking her blood sugar daily, and taking her insulin. (R. 384). While treatment records show that Claimant's diabetes continued to be described as uncontrolled, there is no continued indication that Claimant still was having difficulty understanding her prescribed treatment. (R. 52-55, 387) although she may have been not fully compliant with the recommended treatment plan.

The ALJ recognized that "[d]espite repeated counseling and detailed instruction regarding diet, blood sugar monitoring and medication use, the claimant failed to manage this condition." (R. 39). This finding, however, does not mean that Claimant's cognitive functioning was impaired. Just because Claimant had some difficulty managing her diabetes regime does not mean she was

impaired in her ability to understand, remember, or apply information as Claimant suggests. To the contrary, the ALJ reasonably concluded that Claimant had no more than mild limitations in her ability to understand, remember or apply information and that she had failed to establish any work-related mental limitations. (R. 20-22). The Court is not persuaded by Claimant's arguments that the ALJ ignored the facts or that his conclusions were not reasonably supported by the record before him. For these reasons, the Court finds that the ALJ did not commit any error in his analysis or conclusion relating to Claimant's cognitive functioning that require remand.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 12] is denied, and the Commissioner's Motion for Summary Judgement is granted [ECF No. 19]. The decision of the Commissioner is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 20, 2021